May it please the Court, Patrick Schroed for Petitioner. The evidence during Mr. Krstic's proceedings did not support the application of the persecutor's bar, which barred Mr. Krstic from all forms of relief other than relief under the Convention Against Torture. The relevant sections of the INA employ identical phrasing to define conduct that triggers the application of the persecutor's bar. The relevant definitions state that the alien ordered, incited, assisted, or otherwise participated in persecution, genocide, or extrajudicial killing. The language of the INA uses active words, and they require that the respondent must have taken an active role in the persecution, genocide, or extrajudicial killing. This Court has set forth a two-element test for determining whether the persecutor's bar applies. First, there must be personal involvement, and second, there must be purposeful assistance. The regulations provide for a burden-shifting approach in determining which party has the evidentiary burden. To shift the burden of proof to the respondent to prove that the persecutor's bar does not apply, the Department first must submit evidence for both personal involvement and purposeful assistance, and that evidence must indicate that the bar may apply. In Mr. Christich's case, the Department failed to submit evidence of either element necessary to shift the burden of proof to Mr. Christich. I'd like to talk about personal involvement first. The Board in this case ruled that neither Mr. Christich's personal involvement nor his awareness of persecution was necessary because his actions were part of a chain of conduct. This was a legal conclusion, which this Court reviews de novo. The ruling conflicts with longstanding precedent from both this Court and the Board. In matter of DR, the Board recently stated that the standard for personal involvement involves an analysis of the relationship between the respondent's action and the persecution. The mere acquiescence or membership in an organization is not sufficient to indicate that an individual may have participated in persecution. In Kumar, this Court considered whether a prison guard at a facility in which political prisoners were tortured was subject to the persecutor's bar. In analyzing the element of personal involvement, the Court determined that there was insufficient evidence to shift the burden to the respondent to prove that the persecutor's bar did not apply. Although the respondent in Kumar was found— So, what do you understand the I.J.'s findings to be on personal involvement? I find his statement on personal involvement is that everybody who was a member of the genocide, persecution, and extrajudicial killing. I think that's probably not a fair characterization of the findings. They're talking about a particular time, the Sebrenica. They're talking about being in the trench. They're talking about the location. They're talking about the particular category within the military unit, if you want to call it. I don't think it would be a fair characterization to say that the I.J. simply said anybody who was there at that time and was part of the VRS was somehow implicated. My question really goes to the standard. I think you stated it nicely when you said whether they may. That's not a very strong word, that there may be evidence, and then it shifts. Would you agree that in making a determination of whether the I.J.'s findings support this that we look at that for substantial evidence? Well, I think there's two issues. One is whether the board particularly was applying the right standard in what it means to be personally involved. That is reviewed de novo, but yes, then the determination of whether the person was personally involved would be reviewed for substantial evidence. And based on that, would the immigration judge be entitled to draw reasonable inferences based on not only direct evidence, but circumstantial evidence? Yes, the cases do support that there can be circumstantial evidence, but that circumstantial evidence must be more than being a member of an organization in which some of whom's members committed persecution, genocide, or extrajudicial killing. So how do you respond to Judge McKeown's point in the record when there's evidence that he was in the trenches nearby where the massacre took place, including this retreating individual or a line of individuals? So there are some specifics I'd appreciate, as Judge Paya says, for you to respond to. Yes. So the department's own expert, Mr. McQueen, described defending the trenches during July 1995 as awful military combat operations. And the board itself has said that being a participant in a civil war is not the kind of persecution that can be considered for personal involvement. So there is evidence that Mr. Christich was a soldier in a civil war. However, there's not evidence that he was personally involved or purposefully assisted in the persecution or genocide. And those are two separate issues. And the decision of both the immigration court and the board conflate those two issues. And it's important to analyze them separately. And then it's clear that although he purposefully assisted the VRS, he did not purposefully assist in genocide, extrajudicial killings, or persecution. And this case is also distinguishable from cases that have found other circumstances on top of being a member of an organization that have allowed the court to make a circumstantial finding. For example, in a matter of NBC, which is cited by the government in this case, you had somebody who was in a command authority. And somebody who has a higher position is more likely to know about the overall plans of war, which might include persecution, extrajudicial killing, and genocide. So in that case, the finding that there was circumstantial evidence goes beyond simply being a member of an organization. But on the days in question, the time period in question, he was nearby. He was nearby. But there was no evidence. Why couldn't I.J. infer that he knew what had happened or knew what was taking place? Well, there wasn't evidence that that kind of information was spread to people on the front line. You said there wasn't? Well, the I.J. found the opposite, found it sort of incredible that one would disclaim any knowledge. So we have to go with that lack of credibility finding, don't we? Right. And that was based on evidence, on the expert. Couldn't the expert testify that it was virtually impossible that someone on the front lines would not know that? Yes. However, on cross-examination, he admitted that it was based on reports of a radio being found at a front line, which was in a unit that was not the same as Mr. Kitch's. So on that point, I would say that there's not substantial evidence supporting that conclusion. How about common sense? I don't think. And we tell jurors all the time, you know, you don't leave your common sense at the door to the jury. Right. I'm not sure that common sense would support inferring that somebody who is in a trench on the front lines and who is in a very low position would know about events taking place far away. And he was not somebody, a lot of information in a time of conflict is kept on a need to know basis. I think it's common sense that you don't necessarily tell soldiers all the way down the ranks what's happening in every part of the country. When you say far away, well, it was not within view or. Okay. Right. Because we're not talking far away as one might imagine. We're not talking, you know, that it was in Sarajevo instead of Srebrenica or something like that. Right. Geographically, it's not far, but it is not close enough to find out just by virtue of being in that location. There has to be communication of that information, and that's where there's the lack of evidence that there was communication. However, I would point out that even if Mr. Khrushchev knew of the persecution that took place, he didn't purposefully assist it in that he didn't do anything other than engage in regular and lawful combat operations. And that is supported by the department's own expert. He found that. Let's assume for the purpose of this discussion that the government gets over that hurdle, that it made, using the word made, there's substantial evidence and you can make reasonable inferences. Let's assume we get past that. What are your comments about burden shifting to you and what the record shows? Right. Well, I think that that's why this court and the board have been so clear that there has to be evidence, you know, sufficient to shift the burden. Because once the burden is shifted, it's almost impossible to overcome for a respondent. Because if the respondent denies the allegations, then the court can use that to say, this person is not credible. So in Mr. Khrushchev's case, the burden, the court found that the burden shifted to him. He denied it. And then the court said that by virtue of denying it, he lacked credibility. And so shifting the burden... There was more than that. It was more than just pure denial. He had a laundry list of things he felt went to his credibility. Yes, although the immigration court did say that his denial of the crucial contested facts colored all of his determination of the credibility of respondent. And that shows how what is supposed to be a rebuttable presumption becomes irrebuttable. And that's why it's important that the board and this court preserve that requirement, that there be particular evidence before the burden shifts to the respondent of both personal involvement and purposeful participation. Would you go back to your statement, because it was an interesting one, and I want to make sure I understand it, where you said, once you shift the burden, if the IJ is to hold these credibility findings, that in effect you make a rebuttable presumption an actual presumption. And I would appreciate if you would expand on that point. Yes, well, the problem is that the central issue in Mr. Christich's case was whether he participated in persecution. And in the immigration court's decision, he said, based on the evidence that he may have been involved in persecution, extrajudicial killing, his denials of that lack credibility. And in a case like this, and in Mr. Christich's case, his testimony was the primary evidence that could be used to rebut the persecution. And I think that's probably a common fact pattern in this type of case, because in the case Kumar, we had a similar circumstance where you had a respondent who was a member of an organization, some of whom the members committed persecution, but he was able to testify credibly. Well, he testified credibly in Kumar that he worked for a government agency and that he also affirmatively protested what was this persecution. And here we have all these facts about even being a member of this unit and where it was and what it did and the use of weapons. All of that did not actually inure to the benefit of your client once the evidence came out, did it? Actually, I would say that the experts said that very few members of the 4th Battalion were directly involved in persecution. So in that way, this case is distinguishable from cases where you have individuals who are part of the organizations in which all of the members, or at least the majority of them, were involved in persecution. I think under circumstances like that, if you have an individual who was a member of such an organization at a time and place when persecution took place, that would be a reasonable inference to make. The department's own expert, though, said that it was a very small number. And he also said that there was no evidence that Mr. Kristich himself was among that small percentage of the 4th Battalion that engaged in persecution. Do you want to save your remaining time? Thank you, Your Honor. Good morning, Alison Igoe, representing the Attorney General. May it please the Court. I take issue with several things that my opposing counsel said. One, I don't believe that Mr. McQueen ever said it was a small number of people in this brigade that were involved. There were 8,000 Muslims, men and boys, killed during a plan for ethnic cleansing of the Drina Valley. What Mr. McQueen testified to was that it was the majority Drina Corps, the Zvornik Brigade, and in part the 4th Battalion of which Mr. Kristich was a member and served between 1992 and 1996. The ethnic cleansing began on July 6th and it began, I believe, page 34 to 35, it began with a heavy artillery barrage of Srebrenica, which was a compound protected by the UN that was housing Muslim men, women, and children. The evidence in this case shows that Mr. Kristich was an infantry member and he was trained as a gunner on heavy artillery. He, in fact, had a very special designation, 11342, which meant that he had that special training and his designation was as a gun aimer. I also take issue with my opposing counsel's- Is that the extent of his direct involvement? No, Your Honor. I would point- What was his personal involvement? I would point the court to, I believe it's page, I think it's page 21. He testified that he guarded the line and that he knew that a column was approaching. This column were the men who, they separated out the women and they sent the women and children one place and then they took the men and the men were driven and the men and boys were the ones who were killed. He testified himself that he, and the immigration judge found that he guarded the line and he knew about a column that was approaching and that he had orders to stop them. He also testified that he only followed orders. So if his orders were to stop this column of men and boys approaching, my opposing counsel would argue that the only way that you could be found to have participated or assisted in persecution is if you actually shot somebody. But the case law in this circuit is, and actually across the country, is very clear. You don't need to be involved in trigger pulling. If you did something that assisted, if you stopped a column of men that were then rounded up into an area where the rest of the army was able to take them out by shooting them, you assisted. Is there any evidence that he was involved in stopping of the column? That's, that's how, the soldiers in the Zvornik Brigade, including respondent, had orders to prevent people from the column from passing into safe territory. And when they were prevented from passing into safe territory, they were then executed. So that, that was a finding. So was he one of the soldiers that did that, though? It said they were, they had orders to prevent people and he said, including him. His testimony was that he was in the trenches. Right. But he also said that he guarded the line and he knew about this column approaching and that he followed orders. And the orders were to prevent the column from getting to safe territory. I mean, I think, you know, you have to look at that and say, I mean, you know, he would have this, he would have had the immigration judge believe that he served for four years with a special designation as a gunner in the very brigade that was responsible for executing 8,000 innocent people and that he hunkered down in his, in his trench for the entire time. And yet that's what, not what Mr. McQueen said. And we can't put these people, these individual people, it's impossible to show that he was the one that shot that one or he was the one that shot that one. But that's not, that's not what's necessary. The regulation says that if the evidence indicates that the bar may apply, and remember, this is not a criminal case. We're not talking about reasonable doubt. If the evidence indicates that the bar may apply, this man was part of the Zvornik Brigade, 4th Battalion. He was there, the documents show that he was there on the days in question. His designation was as a gun aimer. The genocide began with heavy artillery bombarding Srebrenica from, from where the Muslims fled and that he said he followed orders. They were ordered to stop this column. That is sufficient to indicate. And then the burden was on him and he could have proved it with credible testimony showing where he was or that he wasn't there. The problem in this case is that Mr. Kristic was not credible throughout the entire procedure. He gained entry to this country with false representations. He was convicted of a section 1101 false misrepresentation of a material fact. He admits that. It's in the record. His conviction is in the record. Can, in the first instance, before the burden shifts, can the judge consider that? I'm sorry? May the judge consider that fact before the burden shifts? I don't think the judge did consider that fact in determining whether the evidence indicated that the bar may apply. I think that the judge took into account, you know, the evidence that Mr. McQueen testified to about his designation. About his, you know, the fact that the records show that he was on duty those days, he admitted that he was in the trench, that he followed orders. That column you referred to, I'm assuming that there were a number of non-combatants or mainly non-combatants, or do we have a... They were non-combatants, yes. They, these were Muslims that were... So this would not be something shelling or shooting soldiers, combatants, but non-combatants. No, this was a genocide. It was a targeted ethnic cleansing of Muslims in the area. And these people that formed this column, they were not combatants. They were, they were civilians. Could Mr. Christich overcome the may and indicate if the burden shifted to him, which the government argues it did, given the credibility findings, was it possible for him to overcome the burden shifting? He could have pointed, you know, as Mr. McQueen pointed out, the Serb army in this case kept incredible records, which is how we know the position that he served in and the days that he served. He could have shown in the records that he wasn't there. He could have credibly testified about his, you know, what he did on those days. But in fact, his, his testimony about where he was and what he was doing shifted constantly. First, he was sleeping during, during, you know, the battle, except that this started on July 6th and ended on July 15th. This is a two week period over which period of time, 8,000 people were killed. And then he ever denied being in that vicinity of the retreating columns during that period? Um, well, he originally denied it when he came into, when he was given refugee status, he denied ever having even been in the army, being in the army. But during the hearing, uh, no, I don't believe he ever denied being there because the documents put him there. He, but what he said was, I was in a trench. I was hunkered down and I saw this column. I didn't know what they were doing. I didn't, I was busy, you know, loading or artillery and I ignored them. Another time he said he was sleeping. Um, and then he said that the shooting only went on for five minutes. He had this evolving testimony about what his, um, participation or what his activities were during, during that time. And so he absolutely, we have had cases where the burden has shifted and with credible testimony, um, the applicant has shown that the, the bar should not apply. But in this case, when you look at the entirety of the evidence, I mean, this gentleman knew coming into this country that if he were pinned in this brigade, in the Zvornik brigade, fourth battalion, that he would have to explain that. And so he lied and he, um, he didn't take that opportunity to say, yes, I served. I was, you know, forcibly recruited. These were the days I was there. I wasn't involved. I wasn't anywhere near. But he, he didn't do that. He lied because he knew that that would have prevented him from entering the country. Roberts, could you explain to me a few procedural matters? Assuming just for a moment that the procedural, that the persecutor bar didn't apply, what, what, what, uh, but he's got this adverse credibility finding. What would be his situation? Well, um, uh, that's, uh, his, uh, his asylum status was terminated and it was terminated, I believe in part because he made this material representation and then the immigration judge had to find that he would not have been, um, uh, eligible for asylum status at the time he gained it or refugee status at the time he gained it. And I believe that the immigration judge took into account, I'm not sure if the, I'm trying to remember, it's a 69 page, very, very detailed opinion. Um, I know that the judge took into account his service and said that his service in this brigade would have raised questions and cut off a line of inquiry. I guess the question would be if the petition were granted, where would this go then, go back to the immigration judge? Well, it depends on, on why the participant, yes, because actually the immigration judge did not take that step further to decide whether he has a well-founded fear of persecution. I'm sorry, I misunderstood the question, but it would have to go back because of those other elements have not been established. So it, uh, the, um, agency would have to have the first bite at determining whether he actually met all of the other, uh, qualifications to establish asylum. Yes. Um, if the court has no further questions, I would urge the court to deny the petition. Thank you very much. Thank you. We have some rebuttal time. Sherwood, your client misstated his place of residence on his application for a refugee status, right? Yes, sir. Exactly. Did he also acknowledge that had he put down the accurate location that he would have been denied? I don't believe he made that concession. You're right. I saw that somewhere, but assume that's a reasonable inference. Uh, is that not evidence of guilt? Uh, I don't believe it's evidence that he participated in genocide, persecution, or extrajudicial killing. A factor that would, obviously it's not conclusive, but would that be a factor that the judge could consider? I think to his credibility, but he still has to hold the department to its burden of proof to show that there's some evidence that shows personal involvement and personal purposeful assistance. Telling a falsehood is certainly against credibility, but the reason for telling the falsehood, I'm not going to admit that I was at this city because if I had, I would have been denied refugee status. Therefore, I went and said I came from a different city. That's more than a credibility issue, it seems to me. It seems to me to acknowledge that I'm not going to admit that I was even there. And Kent, isn't that one factor that could be considered? Uh, I think it can, I disagree. I think that it, it may show that his credibility has problems, but it doesn't show that he participated in prohibited conduct. I just want to briefly address the column and reiterate that, uh, even if he was in the trench defending against the condom, first of all, there was substantial evidence that there were many armed people in the column, although there was a disagreement as to what percentage, but there was no disagreement that it was a substantial number and that there was heavy combat between the two sides. And, uh, the department's own experts stated that defending the call, uh, the lines against the column was part of a legitimate combat in a civil war. And I would, uh, direct the court's attention to the administrative record at page 970 for that quote. Thank you, Your Honor. Thank you. I would like to thank you both for the very helpful arguments and also the briefing, which is very helpful and extensive in this case, the case of Christich versus Barr is submitted.
judges: McKeown, Paez, Huck